**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 2022-0011 |
| ) | |
| ROY ALEXANDER MCELROY-CARLOS ) | |
| a/k/a ROY ALEXANDER MCELROY-CANOS, ) | |
| et al., ) | |
| Defendants. ) | |
| ) | |

**Attorneys:**
**Daniel H. Huston, Esq.**
St. Croix, U.S.V.I.
**Adam Sleeper, Esq.**
St. Thomas, U.S.V.I.
    *For the United States*

**Frederic Chardon-Dubos, Esq.**
Carolina, Puerto Rico
    For *Defendant McElroy-Carlos*

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant McElroy-Carlos' "Second Motion to Dismiss" (Dkt. No. 114) and the Government's Opposition (Dkt. No 124) thereto. For the reasons discussed below, the Court will deny Defendant's Second Motion to Dismiss.

### I. BACKGROUND

The Indictment in this matter charges Defendant McElroy-Carlos and his co-defendants with two counts. (Dkt. No. 80). Count I charges Conspiracy to Possess a Controlled Substance with Intent to Distribute While on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§ 70502(c)(1)(A), 70503(a)(1), 70504(b)(2), 70506(a) and (b) and 21 U.S.C. § 960(b)(3). Count II charges Possession of a Controlled Substance with Intent to Distribute While on Board a Vessel Subject to the Jurisdiction of the United States and Aiding

and Abetting, in violation of 46 U.S.C. §§ 70502(c)(1)(A), 70503(a)(1), 70504(b)(2), 70506(a), 18 U.S.C. § 2 and 21 U.S.C. § 960(b)(3). The Indictment charges that each count occurred "[o]n or about March 5, 2022, upon the high seas and elsewhere within the jurisdiction of this court." (Dkt. No. 80). The Complaint that preceded the Indictment specified that Defendant McElroy-Carlos' vessel was "observed" 140 Nautical Miles Southwest of Isla de Malpelo, Columbia. (Dkt. No. 1-1).

In his Second Motion to Dismiss, Defendant factually disputes the Indictment's charge that he was on the high seas. (Dkt. No. 114). Defendant asserts instead that he and his crew were "eight (8) nautical miles from the coast of Costa Rica when he was arrested." *Id*. at 1. Accordingly, Defendant argues that this Court lacks jurisdiction over this matter and should grant his motion to dismiss the Indictment. *Id*. at 1 (citing *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012)).[1]

In its Opposition to Defendant's Motion, the Government argues that Defendant was originally observed in international waters—approximately 140 nautical miles SW of Isla de Malpelo, Columbia—and ultimately arrested in international waters—approximately 160 nautical miles SW of Isla de Malpelo, Columbia and approximately 257 nautical miles from

---

[1] While Defendant's Second Motion to Dismiss only requests dismissal of the Indictment based on jurisdictional grounds, the Motion also states that Defendant "believes he was also tortured in violation of the Convention Against Torture, citing 18 U.S.C. §[§] 2340-2340(a)." (Dkt. No. 114 at 1). While Defendant's Motion does not expressly seek dismissal based on his allegation of torture, the Court clarifies that "[i]n order to secure dismissal of an indictment due to outrageous government conduct, a defendant must show a nexus between the conduct and either securing the indictment or [ ] procuring the conviction." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 949 (9th Cir. 2022) (internal quotation omitted) (finding that Coast Guard's purportedly inhuman detention conditions did not have a nexus to the prosecution of the matter). In his Second Motion to Dismiss, Defendant does not identify any nexus between the alleged torture and his prosecution. Accordingly, with respect to his allegation of torture, Defendant has neither requested that the Indictment be dismissed nor has he identified grounds upon which the Indictment might be dismissed on that basis.

Costa Rica. (Dkt No. 124 at 1-3). The Government's Opposition attaches as an exhibit the Affidavit of LTJG Alexandria T. Kempf ("LTGJ Kempf"). (Dkt. No. 124-1). In the Affidavit, LTJG Kempf states that, on March 5, 2022, District 11 Tactical Control Law Enforcement Duty Station ("District 11") notified the Coast Guard Cutter LEGARE ("CGC LEGARE") of a "go-fast" style vessel approximately 140 nautical miles Southwest of Isla de Malpelo, Columbia. *Id.* at 1. LTJG Kempf then describes the CGC LEGARE's interactions with District 11 as it relates to the interdiction of Defendant McElroy-Carlos' vessel, LA BENDECIDA LEO ("LBL"). According to LTJG Kempf, the GPS coordinates and approximate locations of the CGC LEGARE and/or the LBL during each phase of the interdiction were between approximately 130 and 170 nautical miles from Isla de Malpelo, Columbia. *Id.* at 1-2.

On June 12, 2024, the Court held an Evidentiary Hearing to address Defendant's Second Motion to Dismiss. At the Evidentiary Hearing, the Government called US Coast Guard Lt. Peter Alexander Diamontoeulos ("Lt. Diamontoeulos"). Lt. Diamontoeulos testified to serving as the Operations Officer for the CGC LEGARE during the March 5, 2022 interdiction of the LGL. In his capacity as Operations Officer, Lt. Diamontoeulos testified to generating a Law Enforcement Situational Report ("LESR") for the March 5, 2022 interdiction of the LGL contemporaneous with the events of the interdiction. The Government introduced into evidence the LESR, which contains GPS coordinates documenting the events of the interdiction. Lt. Diamontoeulos testified that the CGC LEGARE interdicted the LGL over 200 miles away from Costa Rica. Lt. Diamontoeulos also testified that the claim that the CGC LEGARE interdicted Defendant McElroy-Carlos' vessel 8 miles off the coast of Costa Rica was not accurate.

The Government also called Task Force Officer Aldemar Santos ("TFO Santos"). TFO Santos testified to having created a number of Earth Plotting maps by utilizing Google Earth and

coordinates from the LESR. On cross examination, TFO Santos acknowledged that he could not verify the accuracy of Google Earth's process for plotting coordinates.

At the Evidentiary Hearing, Defendant McElroy-Carlos testified that he was arrested 8 nautical miles from the coast of Costa Rica. He further testified that he knew this fact because he was the captain of the vessel; that he knew about navigation; and that as a result he knew the vessel's location when he was arrested. Defendant was asked, but did not identify any measuring instruments that he used to adduce his location at the time of his arrest. Defendant also testified that fuel and time limitations—that he had only 20 barrels of fuel left and had been on the boat for three days—made it impossible for him to be 140 nautical miles away from Isla de Malpelo, Columbia at the time of his arrest, as the Indictment charged.

Defendant argues that the Court should grant his Motion to Dismiss because the Government cannot disprove Defendant McElroy-Carlos' factual claim that he was arrested within the territorial sea of Costa Rica. The Government argues, on the other hand, that it has put forward sufficient evidence to establish that Defendant McElroy-Carlos was arrested on the high seas.

## II.  APPLICABLE LEGAL PRINCIPLES

### A.     Jurisdiction Under the MDLEA

The Maritime Drug Law Enforcement Act, ("MDLEA"), 46 U.S.C. § 70501, *et seq*., does not extend to "drug trafficking in the territorial waters of another nation." *Valencia v. Hollingsworth*, 2015 U.S. Dist. LEXIS 75610, at *7 (D.N.J. June 11, 2015) (citing *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012)). "The United States [] recognizes a territorial sea of twelve nautical miles." *Arroyo v. Hollingsworth*, 2013 U.S. Dist. LEXIS

4

154636, at *8 (D.N.J. Oct. 29, 2013) *(*citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 n. 8, 109 S. Ct. 683, 102 L. Ed. 2d 818 (1989)).

"Whether the vessel in question is subject to the jurisdiction of the United States [under the MDLEA] is not an element of the offense; rather, it is a preliminary question for the trial judge to determine[.]" *United States v. Antonius*, 73 F.4th 82, 86-87 (2d Cir. 2023). Thus, courts, and the not the jury, resolve factual jurisdictional challenges under the MDLEA. *See e.g., Arroyo*, 2013 U.S. Dist. LEXIS 154636, at *8; *see also Valencia*, 2015 U.S. Dist. LEXIS 75610, at *7-10.

"[I]t is the government's burden to show that the United States had jurisdiction over the vessel." *Id.* The Government must establish jurisdiction under the MDLEA by a preponderance of the evidence. *See United States v. Chalwell,* 2024 U.S. Dist. LEXIS 104066, at *10 (D. P.R. June 7, 2024) (citing *United States v. Puello-Morla,* 2023 U.S. Dist. LEXIS 197411, at *4-5 (D. P.R. Nov. 1, 2023). Where testimony conflicts, the Court assesses witness credibility by considering factors such as:

> [T]he witness's demeanor and manner on the stand, his ability to accurately recollect the matters at hand, the manner in which he may be affected by the outcome, the extent to which his testimony is either supported or contradicted by other evidence and testimony in the case, and whether it withstands the common sense test.

*United States v. Payne*, 2024 U.S. Dist. LEXIS 96086, at *12 (D.V.I. May 30, 2024) (internal citation and quotation omitted).

### III. DISCUSSION

#### A. Jurisdiction Under the MDLEA

The Government argues that Lt. Diamontoeulos' testimony, which is supported by GPS coordinates and a report created contemporaneously with Defendant's interdiction, establishes that Defendant was on the high seas and not within the territorial waters of Costa Rica, as he

5

claims. Defendant argues, on the other hand, that the Government cannot disprove his testimony that he was within the territorial waters of Costa Rica when he was arrested.

Here, the burden is on the Government to establish by a preponderance of the evidence that Defendant McElroy-Carlos was within the jurisdiction of the United States under the MDLEA—and thus not in the territorial waters of another nation. *See Chalwell,* 2024 U.S. Dist. LEXIS 104066, *10. After considering the entirety of the record, the Court finds that the Government has met this burden. Specifically, the Government has put forward evidence that establishes by a preponderance of the evidence that the LBL was interdicted in international waters, notwithstanding Defendant's testimony to the contrary.

Specifically, the Court finds Lt. Diamontoeulos' testimony that the LBL was interdicted in international waters credible. Lt. Diamontoeulos testified to having used GPS technology throughout the CGC LEGARE's interdiction of the LBL to track the location of the vessel. Lt. Diamontoeulos contemporaneously documented his coordinates and the facts of the interdiction in his LESR.[2] He testified in a very confident and unfazed manner, and consistent with the facts

---

[2] The LESR provides GPS coordinates for the LBL's location during the interdiction. To substantiate where those coordinates place the LBL, the Government has submitted Google Earth map plottings of the exact distances between the GPS coordinates in the LESR report and Costa Rica at various points during the LBL's interdiction. Those plottings show locations that are between 259.69 Nautical Miles and 330.53 Nautical Miles from Costa Rica. While Defendant generally argues that the Government cannot presume the accuracy of Google Earth, Defendant does not provide any legal authority or factual basis for doubting the accuracy of Google Earth nor does Defendant provide any evidence from any source whatsoever to contradict the notion that the GPS coordinates place the LBL in international waters hundreds of miles away from Costa Rica. Further, there is legal authority supporting courts using Google Earth to establish the "general location of relevant events" through judicial notice. *Pahls v. Thomas*, 718 F.3d 1210, 1216 (10th Cir. 2013) ("Most courts are willing to take judicial notice of geographical facts and distances from private commercial websites such as MapQuest, Google Maps, and Google Earth.") (quoting David J. Dansky, The Google Knows Many Things: Judicial Notice in the Internet Era, 39 Colo. Law. 19, 24 (2010)). Thus, while the Court will not presume the accuracy of the Google Earth with any particular degree of precision, the Court takes judicial notice of Google Earth as commercial website that can plot GPS coordinates to establish the "general

contained in the LESR. Lt. Diamontoeulos' testimony, and the facts in the LESR, are further corroborated by the CGC LEGARE's communications with District 11, including District 11's initial instructions to CGC LEGARE to interdict a go-fast vessel that was approximately 140 nautical miles SW of Isla de Malpelo, Columbia.

In addition, Defendant has not identified any inconsistencies—and the Court has found none—between the testimony of Lt. Diamontoeulos, the LESR, and the Affidavit of LTJG Kempf. All three sources place Defendant McElroy-Carlos in international waters, hundreds of nautical miles away from the territorial waters of Costa Rica and at a location that is approximately 140 nautical miles SW of Isla de Malpelo, Columbia.

By contrast, Defendant McElroy-Carlos' testimony that he was in the territorial waters of Costa Rica is entirely uncorroborated and not credible. Specifically, the Court finds Defendant's explanation of how he knew that he was eight nautical miles from Costa Rica—namely, because he was the captain of the vessel and therefore knew its exact location at all times—to lack credibility. There was no evidence establishing that Defendant had any special skills or experience that would have allowed him to say with any level of certainty the location of the LBL at the time of his arrest and interdiction, or that he relied on any measuring instruments in making that determination. Thus, Defendant's insistence that he knew he was eight nautical miles from Costa Rica—based solely on his status as the captain—was not credible.

Further, Defendant testified that the Government's claim that he was 160 nautical miles from Isla de Malpelo, Columbia and approximately 257 nautical miles from Costa Rica, was impossible because of the LBL's fuel restrictions and the length of the trip. Defendant, however,

---

location of [] events." *Id.* The Court thus views the Google Earth data as corroborating Lt. Diamontoeulos's testimony and LTJG Kempf's sworn statement that the LBL was on the high seas when it was interdicted.

could not coherently explain the basis for this claim. The Court offered Defendant multiple opportunities to clarify this testimony to no avail. Indeed, Defendant ultimately reverted to his claim that he was the captain of the vessel and, therefore, knew his location.

Accordingly, the Court finds that the Government has put forward sufficient evidence to meet its burden to demonstrate, by a preponderance of the evidence, that the United States has jurisdiction under the MDLEA because the LBL was interdicted and its occupants were arrested in international waters.

## IV.   CONCLUSION

In view of the foregoing, the Court will deny Defendant McElroy-Carlos' Second Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.

Date: July 24, 2024                               _____/s/_____
                                                  WILMA A. LEWIS
                                                  District Judge